NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3972

———

UNITED STATES OF AMERICA

v.

FREDDIE SINKLER, JR.,
Appellant

———

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. Criminal No. 01-cr-00071-1)
District Judge: Honorable Yvette Kane

———

Argued:  December 11, 2007

Before: RENDELL, STAPLETON, *Circuit Judges*,
and IRENAS,[*] *Senior District Judge.*

(Filed: March 3, 2008)

———

Allen C. Welch, Jr., Esq.     **[ARGUED]**
Krevsky & Rosen
1101 North Front Street
Harrisburg, PA  17102
   *Counsel for Appellant*

---

   [*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

Christy H. Fawcett, Esq.
Theodore B. Smith, Esq.   **[ARGUED]**
Office of U.S. Attorney
228 Walnut Street, P.O. box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

OPINION OF THE COURT

IRENAS, *Senior District Judge.*

Freddie Sinkler, Jr. ("Sinkler") was pursued by the police in a high speed car chase, which ended when the police vehicle collided with Sinkler's Jeep and the Jeep overturned. The police officers involved in the chase found a backpack located fifteen feet away from Sinkler's Jeep, which they searched at the scene of the crime, and later inventoried at the police station. The police found over fifty grams of crack cocaine and drug paraphernalia in the backpack. Sinkler moved before the District Court to suppress the drug evidence. The Court denied Sinkler's motion, ruling that the evidence obtained from the backpack search was admissible under the inevitable discovery doctrine.[1] Sinkler now appeals this denial on the sole ground that the District Court lacked authority to consider the doctrine of inevitable discovery because the Government did not expressly invoke the doctrine at the hearing on Sinkler's motion to suppress.

---

[1] The inevitable discovery doctrine provides that "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." *Nix v. Williams*, 467 U.S. 431, 447 (1984).

I.

The Court of Appeals reviews a District Court's factual determinations in a suppression hearing for clear error, while its legal holdings and mixed questions of law and fact are subject to plenary review. *United States. v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006).

II.

On January 7, 2001, shortly after midnight, Sinkler initiated a high-speed car chase, which ended when his Jeep collided with a police vehicle, spun and turned over onto its driver's side. This caused the contents of Sinkler's vehicle to spill into the area immediately surrounding the Jeep. The police officers arrested Sinkler and retrieved the spilled contents of the Jeep, as well as a backpack, which was found approximately fifteen feet from the Jeep. They searched the backpack at the scene of the accident and then brought it back to the police station, where its contents were inventoried. The drugs and drug paraphernalia found in the backpack were seized.

On March 7, 2001, a federal grand jury in Harrisburg, Pennsylvania, indicted Sinkler on charges of distribution and possession with intent to distribute fifty grams and more of cocaine base, in violation of 21 U.S.C. § 841(a). Sinkler pleaded not guilty at his initial appearance on March 27, 2001.

On May 7, 2001, Sinkler filed a pretrial motion to suppress evidence, seeking to

suppress 256 grams of crack cocaine, marijuana, cash, and drug paraphernalia that were seized in connection with his January 7, 2001, arrest. District Judge Kane held an evidentiary hearing on this motion on July 19, 2001, and denied Sinkler's suppression motion on July 27. The District Court held, *inter alia*, that the officers' seizure of the backpack was valid because Sinkler abandoned it, but did not give an evidentiary basis for its holding. It further concluded that even absent abandonment, the officers were justified in seizing the backpack as part of a search incident to the lawful arrest of Sinkler because the backpack was in the area adjacent to Sinkler's arrest.

Sinkler pleaded guilty on October 1, 2001 pursuant to a plea agreement. His plea agreement, however, preserved his right to appeal the denial of the suppression motion under Fed. R. Crim. P. 11(a)(2). On February 20, 2003, the District Court sentenced Sinkler to 212 months of imprisonment.

On February 28, 2003, Sinkler timely appealed to this Court, which issued a non-precedential opinion vacating the District Court's order denying Sinkler's suppression motion. *United States v. Sinkler*, 91 Fed.Appx. 226 (3d Cir. 2004). On appeal the United States argued that the search of the backpack was valid "based on abandonment, incident to arrest, and as an inventory search." *Id.* at 229. However, it only gave cursory treatment to the abandonment and inventory search arguments. *Id.* at 229, n. 4.

This Court found that the record was insufficiently developed to support a finding that the backpack had been searched incident to a lawful arrest or that it had been abandoned or subjected to an inventory search. *Id.* at 232-34. In a lengthy footnote,

4

Judge Rendell also pointed out that even if the original seizure at the scene was not justified as itself being an inventory search, the seizure might still be justified if the government could prove "by a preponderance of the evidence that the backpack would have inevitably been the subject of an inventory search[.]" *Id.* at 233, n. 10. Accordingly, the case was remanded to the District Court for further factual findings to determine whether: (1) Sinkler abandoned the backpack; (2) the contents of the backpack were properly seized as part of a valid search incident to Sinkler's arrest; (3) the seizure resulted from a proper inventory search; or (4) the backpack would have been found as part of a properly conducted inventory search pursuant to established police department procedures.

On remand, the District Court held an evidentiary hearing on September 8, 2004, in which Officers Sunday and Delozier testified about the Harrisburg Police Department's written inventory policy and standard procedures. In an opinion and order dated November 23, 2004, the District Court again denied Sinkler's motion to suppress, this time relying on the inevitable discovery doctrine. It held that "notwithstanding the fact that a search is invalid because it was not conducted incident to an arrest or because it was not conducted as an inventory search, items seized during a warrantless search will not be suppressed if the police would have discovered such items in the normal course of business. . . . Because the Court finds that the backpack would inevitably have been inventoried along with the other items confiscated at the arrest scene pursuant to established inventory policy and practice, the narcotics and paraphernalia seized from the

5

backpack will not be suppressed." (App. A-33, 35).

Sinkler filed an untimely notice of appeal, which this Court dismissed for lack of jurisdiction. On March 20, 2006, Sinkler filed a motion to vacate judgment pursuant to 28 U.S.C. § 2255, asserting ineffective assistance of counsel, which was granted. The District Court then resentenced Sinkler, *pro forma*, on August 29, 2006. On August 31, 2006, Sinkler, represented by his current counsel, filed the instant appeal.

### III.

Sinkler's appeal is limited to whether the District Court erred when it ruled, *sua sponte*, that the doctrine of inevitable discovery applied to the facts of this case, and thus denied Sinkler's suppression motion. Importantly, Sinkler does not contest the merits of that determination. Rather, his appeal is procedural, focusing upon the District Court's ruling that the drug evidence would have inevitably been discovered by the police even though neither the prosecution nor the defense raised the issue at any time.

Specifically, Sinkler contends that although police officers testified to a department policy that would have led to the search of the backpack eventually, he did not challenge the uniformity and constancy of the policy because the government did not argue inevitable discovery. Thus, he argues, that when the District Court raised the doctrine *sua sponte* in its opinion, it violated his constitutional Due Process rights by denying him the opportunity to respond to the finding that the contents of the backpack would have been inevitably discovered.

We may uphold the District Court's denial of Sinkler's suppression motion on a ground it raised *sua sponte* as long as it does not deprive Sinker of the "opportunity to adduce evidence in his favor." *United States v. Salazar,* 805 F.2d 1394, 1400 (9th Cir. 1986); *see also Giordenello v. United States,* 357 U.S. 480 (1958); *United States v. Henderson,* 241 F.3d 638, 649 (9th Cir. 2000). Moreover, a District Court may enter summary judgment *sua sponte* "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *DL Res., Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209 (3d Cir. 2007). Based upon these principles, we will uphold the District Court's ruling because Sinkler had the opportunity to, and did, adduce evidence relating to the theory of inevitable discovery.

Inevitable discovery as a possible justification for the search did not first appear in the trial judge's decision, but as noted above, was specifically listed by this Court as an issue to be determined on remand. *Sinker*, 91 Fed.Appx. at 233, n. 10. During the evidentiary hearing, much of the testimony on both direct and cross examination specifically dealt with the police department's written procedures and standard practices for conducting an inventory search, including the handling of closed containers.

Two police officers, Sunday and Delozier, testified concerning the apprehension of Sinkler and the handling of the backpack and other items found at the scene of the arrest. Officer Sunday testified that the Harrisburg Police Department has a written policy with respect to inventory searches of vehicles involved in arrest situations, but that the policy

does not address closed containers.[2]  However, he explained that the officers have a practice of searching containers, open or closed, at the scene of an arrest "so that a record can be recorded of those items before the towing company takes possession of that vehicle and it's removed from the scene."  (Hearing Transcript, 43:3-5).

    Both officers made clear that the initial examination of the contents of the backpack at the site of the arrest was not done pursuant to an inventory search policy, but rather for reasons including the safety of the officers and the prevention of accusations of theft or illegal conduct.  To the extent that there was an actual inventory search, it did not occur until all of the items seized at the scene of Sinkler's arrest were transported back to the police station and logged in a completed property report.  (Hearing Transcript, 70:5-15 (Officer Sunday); 84:12-17 (Officer Delozier)).

    Significantly, on cross-examination, Officer Delozier made clear that he did not consider the examination of the backpack at the scene of the arrest to be an inventory search, and that even if the backpack was not examined at the scene of the arrest, its contents would have been discovered in an inventory search conducted at police headquarters:

> Q.  No what?  No, [the examination of the backpack at the arrest scene] wasn't done pursuant to the inventory search?
>
> A.  No, I would say that the bag would be – the bag that was there would have been searched pursuant to an inventory search.  Everything would have been searched.  The vehicle would have been searched.  Picked up

---

[2] The written inventory policy was admitted into evidence.

>  the stuff that was ejected from the vehicle, put it back in to log is as property of the subject, defendant, Freddie.

(Hearing Transcript, 83:12-20).

## IV.

While the government may not have expressly used the words "inevitable discovery" during the remand proceedings, it was not a legal theory snatched out of thin air by the District Court. This Court's prior opinion clearly made inevitable discovery an issue to be considered by the trial court on remand. As recognized by Judge Rendell in that opinion, the policy and procedures of the Harrisburg Police Department for conducting an inventory search were relevant not only to determining whether the examination of the contents of the backpack at the arrest scene could be justified as an inventory search, but also on the issue of inevitable discovery.

The great bulk of the evidence at the hearing involved the circumstances surrounding the seizure and search of the backpack at the time of Sinkler's arrest, the inventory search policies of the Harrisburg Police Department, and the actual inventory procedures which were followed in this case. That evidence led the trial judge to conclude that the search at the scene of the arrest was not done pursuant to the Department's inventory policy, but that a search would have been (and was) conducted thereafter at police headquarters which would have led to the inevitable discovery of the contraband.

Indeed, at oral argument, Sinkler's counsel conceded that the government did not fail in its burden of proving that the backpack would have been inevitably discovered.

9

Defendant's counsel clearly understood that the Harrisburg Police Department's policies and procedures for conducting inventory searches, as well as the details of what actually happened to the backpack in this case, were crucial to determining the validity of any backpack search that occurred. His vigorous cross examination demonstrates this awareness. In denying suppression on the ground of inevitable discovery, a legal theory identified by this Court in its remand opinion, the District Court's decision did not impermissibly infringe on Sinkler's Due Process rights.

    For the reasons set forth above, the District Court's Order entered on November 23, 2004, denying Sinkler's motion to suppress evidence and the Judgment of Conviction entered on August 29, 2006, will be affirmed.